IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GEORGE LUNA | § | CAUSE #: B-04-CV-133 |
| vs. | § § § | |
| JOHN DUFFY | § | JURY |

PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSE
TO DEFENDANT'S MOTION FOR LEAVE TO FILE
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND IMPROPER VENUE

United States Courts
Southern District of Texas
FILED

JUN 13 2005

Michael N. Milby, Clerk

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW George Luna (Plaintiff), Pro Se, and file this his second supplemental response to John Duffy's (Defendant) motions to dismiss.

I filed suit against Duffy on August 9, 2004. On or about November 12, 2004, Defendant filed an answer. Thereafter, Defendant filed a motion to dismiss alleging lack of personal jurisdiction and improper venue.

The Court ordered Defendant to refile the motions to dismiss that would comply with the Federal Rules of Civil Procedure. Defendant, however, ignored the Court's explicit order and filed his second motion to dismiss on February 12, 2005 wholly in non-compliance with the Court's order. Accordingly, on April 19, 2005, the Court struck Defendant's motion to dismiss; Defendant's pro hac vice motion; and ordered Defendant to procure local counsel. The Court gave Defendant yet another opportunity to comply with the Rules of Civil Procedure. (Defendant has now been effectively granted three [3] opportunities to seek dismissal0

Defendant retained local counsel who has now filed a motion for leave to file Defendant's motions to dismiss. Defendant

1

filed the motion seeking leave on May 6, 2005 and certified to this Court that he provided Plaintiff with a copy of said motion by certified mail on May 6, 2005. (I did not receive Defendant's motion until May 16, 2005) The Court had previously ordered Defendant to file his pleadings on or before May 6, 2005. The Court was aware the motion for leave was opposed (Defendant noted this in his motion); yet, the Court entered its order granting leave without affording me an opportunity to file a response.

My response to Defendant's motion for leave is simple, consistent with the Rules of Civil Procedure, and consistent with due process: Defendant's motion for leave should have been denied. Defendant has been granted wide latitude by this Court and numerous chances to comply with both the Court's local rules and the Rules of Civil Procedure. It is disengenuous for Defendant to ask this Court to consider dismissing my lawsuit against him based on (his interpretation of the rules) and at the same time ask this Court to relax the same Federal Rules of Civil Procedure with respect to his (Defendant's) pleadings.

I ask the Court to deny Defendant's various motion on three (3) basis: 1) Defendant waived filing his 12(b) motions, 2) Defendant's motions to dismiss, if not waived, have never been in compliance with the rules of civil procedure (i.e., they are wholly conclusionary and without supporting affidavits), and 3) Defendant's motions are without merit because there exists personal jurisdiction in this Court and venue is proper.

Defendant Duffy is subject to personal jurisdiction in this Court. Defendant contends because he is a Pennsylvania resident and represented me in both state court (and federal court) that he is not amenable to personal jurisdiction in Texas. Defendant

2

argues that he does not have minimum contacts with Texas. This Court may confer personal jurisdiction on Defendant based on either general or specific jurisdiction. Specific jurisdiction exists in this case.

I agree with Defendant that in a diversity action, the Court may excerise personal jurisdiction of Defendant only to the extent permitted under the Texas long-arm statute and the Due Process Clause of the 14th Amendment. The Court is aware the seminal test was first outlined in International Shoe v. Washington, 326 U.S. 310 (1945) The due process clause (and consistent with Texas' long-arm statute) requires that before a forum may exerise personal jurisdiction over a nonresident defendant, that defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum." Id.

Courts apply a five-part test when determining minimum contacts: 1) the nature and quality of the contacts; 2) the quantity of the contacts; 3) the relation of the cause of the action to the contacts; 4) the interest of the forum state in providing a foorum for its residents; and 5) the convenience of the parties. E.g., Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816 (8th Cir. 1994) It is the third factor that determines whether the contacts give rise to either "specific" or "general" jurisdiction. Specific jurisdiction exists when the defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. A court has specific jurisdiction if the defendant committed at least one act in the forum and the act is substantially related to the suit. See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir. 1992)

Defendant correctly notes that "general" jurisdiction will attach when the nonresident defendant's contacts with the forum state are continuous and systematic.

As noted above, to confer specific jurisdiction on Defendant he need only commit one act and that act be substantially related to my cause of action. In this case, Defendant has committed acts that sufficiently confer specific jurisdiction. Defendant and Plaintiff entered into (after negoiations) into an attorney-client relationship and contract. The attorney- client contract was negoiated and executed in the State of Texas. (See attached exhibit)

Soliciting business and negoiating, executing and even part-ially performing contracts in the forum state have been held to be sufficient to establish specific jurisdiction. E.g. Rainbow Travel Serv., Inc. v. Hilton Hotels Corp., 896 F.2d 1233 (10th Cir. 1990) Defendant availed himself of the benefits of the forum state when he was retained by me in the forum state; negoiated and executed the attorney-client contract in the forum state; and accepted payment pursuant to the attorney-client contract in the forum state. Clearly, Defendant has committed at least one act in the forum state; therefore, the issue is whehter that act(s) are related to my cause of action. The answer is yes. I hired Defendant in the State of Texas to represent me in criminal proceedings. The attorney-client agreement as negoiated, drafted, and executed in Texas clearly provided that Defendant was hired for one purpose and one purpose only: a trial defending me on all charges that stemmed from my arrest on drug charges. To be clear, I never retained Defendant for any purpose of "cooperating" or pleading, or any other activity other than a fully contested

4

trial. Defendant breached the attorney-client contract and his fidiciary duties to me when, among other things, he consented to and forged my signature on a purported proffer statement. (For the Court's awareness, I have attached a copy of an expert in handwriting exemplars who has testfied that in her opinion Defendant forged my signature.) Defendant's actions are directly related to his acts committed in this forum state (Texas) and as such confer specific jurisdiction.

The additional element regarding the question of personal jurisdiction is whether the maintenance of teh suit in the forum state will offend the traditional notions of fair play and substantial justice. See <u>World-Wide Volkswage Corp. v. Woodson</u>, 100 S.Ct. 559 (1980) The Court's assumption of jurisdiction over Defendant will not offend the traditional notions of fair play and substantial justice because the exercise of personal jurisdiction over Defendant Duffy is reasonable. There is little burden on Defendant. The forum state (Texas) has an interest in adjudicating the dispute and finally, under <u>World-Wide</u>, the Court should consider the plaintiff's interest in obtaining convenient and effective relief.

Because Defendant has minimum contacts with Texas and those contacts/acts are related to my cause of action, the Court should deny Defendant's motion to dismiss for lack of personal jurisdiction. This litigation results from the breach by Defendant that arose out of and relate to the acts in this State. See. <u>Burger King Corp. v Rudezewicz</u>, 105 S.Ct. 2174 (1985)

Defendant has also filed a motion alleging that venue is not proper in this Court. Defendant correctly notes that pursuant to 28 U.S.C. §1391, venue is proper where Defendant has his legal

5

domicile or where a substantial part of the events or omissions given reise to the plaintiff's claim took place. Using this approach, the Court is not required to determine the "best" venue but rather only whether a substantial part of the activities took place in the venue selected. See <u>Setco Enters v. Robbins</u>, 19 F.3d 1278 (8th Cir. 1994) It is not enough for a defendant to merely show another forum has a more substantial connection. Defendant, is in effect, simply arguing that Pennsylvania has a more substantial connection than Texas.

I agree that Defendant resides in Pennsylvania (this suit is based on diversity after all); however, a substantial part of the events/ommissions that gave rise to my lawsuit occured in this venue. Therefore, venue is proper here. Accordingly, the Court should deny Defendant's motion to dismiss based on improper venue and likewise deny Defendant's motion to transfer this case to the Eastern District of Pennyslvania.

Regarding both of Defendant's motion for dismissal, the Court should deny them both because Defendant has waived filing his 12(b) motions. Defendant did not file his motion in a pre-answer pleading and has therefore waived making any such arguments. Unlike subject matter jurisdiction (which may be presented for the first time on appeal and cannot be waived), personal jurisdiction and venue arguements may be waived. Defendant now argues the Court should "waive" such rules that would properly reject his motions because among other things "he is a primarily a criminal defense lawyer and was not familar with the Rules of Civil Procedure and this Court's local rules. Defendant's argument should have no place in this Court.

6

For the reasons stated herein and as stated in my former responses, there exists personal jurisdiction in this Court over Defendant and venue is proper in this Court. Accordingly, I request this Court deny Defendant's motion for dismissal. Alternatively, I also move the Court to deny Defendant's motions for dismissal because he has waived making any such motions by failing to file the motions before any preanswer pleadings. Respectfully submitted,

George Luna
#54528-066
FCI Seagoville E-6
P.O. Box 9000
Seagoville, TX 75159

### Certificate of Service

I certify that a true and correct copy of the foregoing was served on Defendant via his counsel on this 8th day of June 2005 at the following address:

Michael R. Cowen
COWEN & BODDEN
520 E. Levee Street
Brownsville, TX 78520

George Luna

EXHIBIT 1

*Law Offices*

# DUFFY & GREEN

JOHN J. DUFFY
JOSEPH P. GREEN, JR.
P.J. REDMOND

SUITE 307
TEN NORTH CHURCH STREET
WEST CHESTER, PA 19380-3059
*Telephone* 610-692-0500
*Facsimile* 610-430-6668

March 23, 1999

Alfonso Ibanez, Esquire
P.O. Box 761055
San Antonio, TX 78245-6055

Re: *Commonwealth v. Jorge E. Luna*

Dear Mr. Ibanez:

I write to memorialize our fee agreement for the defense of criminal charges brought against Jorge Lune, in Chestre County, Pennsylvania. The Supreme Court of Pennsylvania requires us so to do. A copy of this will be provided for Mr. Luna to read at the Chester County Prison; however, because he is incarcerated, the original is being sent to you for safekeeping, inasmuch as you have paid the retainer that brought us into Mr. Luna's case.

Unlike civil matters, we do not bill in criminal cases or investigations on an hourly rate. Experience dictates that the case be appraised at the outset and a flat fee charged. That fee includes routine expenses and all services provided up to <u>and including trial of the case</u>," if necessary. In this matter, we have agreed that our fee shall be $50,000.00. We acknowledge receipt of $15,000.00.

The fee paid is the retainer we require to secure our entry into the case. It is the figure we compute will compensate our firm for services required <u>to prepare Mr. Luna's case for trial</u> or non-trial disposition and to <u>try the case in court</u>, if necessary. Pre-trial motions and hearings are also included in the fee. The fee does **not** cover representation after the return of a verdict at a trial. If further representation is required at that time we shall discuss additional fees for the services to be provided.

Alfonso Ibanez, Esquire
March 23, 1999
Page Two


    Our fee does not include out-of-pocket expenses such as charges for transcripts, court reporters, copying (other than in-house), expert witnesses or private investigators, or costs of computer legal research services and the like. Day-trip travel expenses are included in the fee; overnight travel expenses are not. It is not our practice to pad expense statements and, unless the unusual occurs, what is written here should cover the question of taxing of expenses. If the unusual does occur, we shall seek your approval of the expenditure in advance.

    Finally, because our agreement to defend Mr. Luna at this juncture may serve to prohibit us from accepting other engagements in this or allied investigations, we agree to act as counsel with the understanding that our fee shall be non-refundable, "except that this provision shall not apply if we unilaterally" decide to terminate our attorney-client relationship.

    This is more detailed and marked by more lawyer-talk than our chats on the phone and meeting. If you have questions, let's talk. Otherwise, we are going to work.

                                          Sincerely,

                                          John J. Duffy

JJD:pm

*Law Offices*
# DUFFY GREEN & REDMOND

JOHN J. DUFFY
JOSEPH P. GREEN, JR.
P.J. REDMOND

JOHN A. DISANTIS
*Of Counsel*

SUITE 307
TEN NORTH CHURCH STREET
WEST CHESTER, PA 19380-3059
*Telephone* 610-692-0500
*Facsimile* 610-430-6668

March 14, 2002

Jamie W. Goncharoff, Esquire
14 North Church Street
west Chester, PA 19380

*Re: Luna Fee Dispute*

Dear Mr. Goncharoff:

I write on behalf of Mr. Duffy to respond to Mr. Luna's fee dispute complaint. We have no intention of returning one dime to Mr. Luna.

This non-refundable fee agreement was negotiated by Mr. Duffy and Alfonso Ibanez, Esquire, Mr. Luna's lawyer in Texas. The non-refundable fee agreement was outlined and confirmed in our original fee letter sent to Mr. Ibanez, and copied to Mr. Luna for his review. We enclose a copy of that letter for your review.

Mr. Luna's original complaint came to us from Daniel L. McCaughan, Esquire. A copy of his letter of November 1, 2000, is also enclosed for your review, along with our response dated November 10th. Our response sets forth the operative facts.

If you think that mediation has any prospect of success, we are willing to participate. But to be frank, we have no intention of agreeing to the return of any amount of money.

Very truly yours,

*Joseph P. Green, Jr.*

JPGjr/pcl

cc:   Mr. Jorge Luna

UNSWORN DECLARATIONS UNDER PENALTY OF PERGURY

My name is Alfonso Ibanez "  " My date of birth is March 10, 1944. My social security number is 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. I presently reside at 3403 Lura Ln., San Antonio, Texas. I am presently unemployed.

Prior to 2000 I was a Texas licensed attorney who represented Jorge Luna on several civil cases. Jorge Luna was initially arrested and charged with violating drug laws of the state of Pennsylvania  I was unable to represent him because I was not licensed to practice law in Pennsylvania, so he first got a court appointed lawyer  Later Jorge and I met and he decided to hire Mr. Duffy, a local attorney. At a meeting that I witnessed between Jorge Luna and Mr. Duffy, he agreed to represent Jorge Luna in state and federal court for a fee of $50,000.00. A discussion ensued where Jorge Luna requested from Mr. Duffy a speedy jury trial. Mr. Duffy agreed to Luna's request.

Declaration

As provided by 28 U.S.C. 1746, I, ALFONSO IBANEZ, declare under penalty of Perjury that the foregoing is true and correct.

Executed on this 26 day of April 2004.

ALFONSO IBANEZ

EXHIBIT 2

1   Number 58, trait discrepancies number six, Defense Exhibit
2   Number 59, trait discrepancies number seven, Defense Exhibit
3   Number 60, trait discrepancies number eight, and one last
4   one, Defense Exhibit Number 61, trait discrepancies number
5   nine, would you explain to the Court what you did there?
6   A   Yes.  So what I did was I then compared, letter by
7   letter, the questioned signature with standards nine through
8   26, and standards 27 through 47.  And my conclusions were the
9   same.
10  Q   And that conclusion being that Mr. Luna did not sign --
11  A   He definitely did not sign it.
12  Q   -- Defense Exhibit Number 13 and 13A.
13  A   It had all the signs of forgery.  It didn't jive with the
14  way he normally writes.  They weren't even remotely similar.
15  And I was totally and completely satisfied as an expert that
16  when Mr. Luna denied signing this document, that he, in fact,
17  did not sign it.
18  Q   Now, with respect to -- once having determined that Mr.
19  Luna did not sign it, were you able to make or gain any
20  insight as to who may have signed that document --
21  A   Yes.
22  Q   -- in Mr. Luna's place?
23  A   After comparing the questioned signature with the
24  handwriting of his lawyer, Mr. Duffy, it's my professional
25  opinion that Mr. Duffy signed Mr. Luna's name, because the

Stevens - Direct                                                148

1  traits that are not found in Mr. Luna's handwriting are found
2  in Mr. Duffy's signature.
3  Q   Let me show you collectively what's marked Defense
4  Exhibit Number 62, and you define this as trait --
5  A   Similarities.
6  Q   Similarities.  I show you Defense Exhibit Number 63, and
7  you define as trait similarities number two.  I'll give them
8  all to you at one time.  Defense Exhibit Number 64, and you
9  identified them as trait similarities number three.  Defense
10 Exhibit Number 65, and you have determined them to be trait
11 similarities number four.  Defense Exhibit -- and Defense
12 Exhibit Number 66, and you have defined them as trait
13 similarities number five.
14       And when we talk about trait similarities now with
15 respect to these exhibits that you have in front of you,
16 you're referring to similarities between Duffy's signature
17 and the forged Luna signature on document exhibit -- Defense
18 Exhibit 13 and 13A, is that correct?
19 A   With a slight difference.  It's not just Duffy's
20 signature, it's Duffy's handwriting, because I also took into
21 account his July 19th.
22 Q   So the trait similarities that you have found then are
23 similarities between Duffy's signature on July 19th, 1999 I
24 believe it is, and -- as well as his handwriting and
25 signature with the purported George Luna signature on Defense

1  Exhibit 13 and 13A --
2  A    Absolutely.
3  Q    -- the proffered statement.
4  A    I found -- I found similarities -- well, the first being
5  the G's size, shape, slant and pressure strongly resembles
6  Duffy's nine. The shape of the initial hooks on the Gs can
7  also been seen in the Duffy standards.
8  Q    Let me stop you there and ask you this. You're saying
9  that the G resembles -- the letter G resembles the letter or
10 the number nine as written by Mr. Duffy.
11 A    Yes.
12 Q    Can you explain to the Court how you can make a
13 comparison between a letter and a number written by an
14 individual?
15 A    Well, it's the same way you can compare an I with a one,
16 a six with a G, one way of writing a G. It's because it's
17 formed the way -- the way the nine is formed is -- is very
18 similar to the way the G is formed in this particular
19 signature --
20 Q    Is that --
21 A    -- this questioned signature.
22 Q    -- the comparison between the forming of a letter and the
23 forming of a number, such as the letter G and the number
24 nine, is that something that's standard in terms of document
25 examination?

Stevens - Direct                                    150

1  A   Yes, absolutely.
2  Q   You may proceed.
3  A   The shape of the initial hooks on the Gs can all be seen
4  in the Duffy standards.  The tiny overwrite on the right side
5  of the G is also seen on Duffy's nine.  The left side of the
6  G's loop is flat, just like Duffy's have it, a flattening,
7  the left side of the loop of his H.  The length and strength
8  of the lower extension of the unlooped G resembles the
9  extension on Duffy's nine.
10         The roundness, length, size, shape and slant of the
11 R, which is actually a combined OR, looks like the terminal
12 on the initial J in Duffy's signature.
13         When a person is forging another person's name, the
14 habits that they have in their signature come out in a
15 forgery, and that's how handwriting experts are able to
16 determine who forgers are -- who forged what, because the
17 habits are so ingrained in signing a name.
18 Q   So you're saying habits you found in Mr. Duffy's
19 handwriting appear in the questioned signature of George Luna
20 on Exhibit 13 and 13A.
21 A   Right.  And yet, these can't be found in George Luna's
22 standards.  And we certainly had enough of them to look at.
23 We certainly had enough of them to compare.
24         The V-shaped U in Luna looks like the V-shaped
25 garland in John.

Stevens - Direct                                                151

1  Q    When you say the V-shaped U looks like the V-shaped
2  garland --
3  A    Garland in John.
4  Q    -- what do you mean by garland?
5  A    In the N in John.
6  Q    The N?
7  A    Yes.
8  Q    Okay.
9  A    And here.  The upward terminal and hook is a Duffy trait.
10 The upward terminal hook, see in the A in Luna, it doesn't
11 look anything like his A.  It doesn't look anything like his
12 A or his terminal.  And yet, this is a habit that you see in
13 -- in Mr. Duffy's handwriting.
14 Q    What exhibit number are you looking at there?
15 A    This is Exhibit --
16 Q    It's on the front.
17 A    -- D-66, trait similarities five.  The upward terminal in
18 hook is a Duffy trait, which we can see in his upward
19 terminals with hooks.
20 Q    Now, how long --
21 A    So in my professional opinion, Mr. Duffy signed Mr.
22 Luna's name.
23 Q    How long did you examine these documents and the
24 handwriting exemplars or standards of Mr. Luna with the known
25 signature of Mr. Duffy, prior to reaching your opinion?  Do

GEORGE LUNA
#54528-066 E-6
FCI Seagoville
P.O. Box 9000
Seagoville, TX 75159

United States District Court
Office of the Clerk
Southern District
P.O. Box 61010
Houston, TX 77208